IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF WEST VIRGINIA, HUNTINGTON DIVISION

BEFORE THE HONORABLE ROBERT C. CHAMBERS, JUDGE

---o0o---

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    No. 3:19-CR-00080-1

MATHEW BYRD,

        Defendant.
_____/


---o0o---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SENTENCING HEARING

MONDAY, FEBRUARY 3, 2020, 10:00 A.M.

---o0o---


| | |
|---|---|
| For the Government: | UNITED STATES ATTORNEY'S OFFICE<br>845 Fifth Avenue, Room 209<br>Huntington, West Virginia 25701<br>BY:  STEPHANIE SHANNON TAYLOR<br>Assistant United States Attorney |
| For the Defendant: | R. LEE BOOTEN, II<br>637 7th Street<br>Huntington, West Virginia 25701 |
| Reported by: | KATHY L. SWINHART, CSR<br>Official Court Reporter<br>(304) 528-2244 |

Proceedings reported by mechanical stenography,
transcript produced by computer-aided transcription.

1     HUNTINGTON, WEST VIRGINIA

2     MONDAY, FEBRUARY 3, 2020, 10:00 A.M.

3     ---o0o---

4         THE COURT: Good morning.

5         MS. TAYLOR: Good morning.

6         MR. BOOTEN: Good morning, Your Honor.

7         THE COURT: All right. Are we ready to proceed in

8   Mr. Byrd's case?

9         MR. BOOTEN: Yes, Your Honor.

10        THE COURT: Madam Clerk, would you administer the oath

11  to Mr. Byrd?

12        THE CLERK: Please raise your right hand.

13              MATHEW BYRD, DEFENDANT, SWORN

14        THE DEFENDANT: Yes ma'am.

15        THE CLERK: Thank you.

16        THE COURT: First I want to address the motions that

17  the defendant filed just about a week ago, as I recall, a

18  motion first for a presentence mental evaluation, and then a

19  motion to continue sentencing based upon that.

20        Do you want to explain the basis for the motion for a

21  presentence mental evaluation?

22        MR. BOOTEN: Yes, Your Honor.

23        Mr. Byrd has -- has a history of mental issues dating

24  back to I believe even grade school. And it's our opinion

25  that it would aid the Court in fashioning an appropriate

1 sentence if he could have a presentence mental evaluation done
2 before a sentencing hearing.
3      THE COURT: Well, I take it that you do not claim and
4 he does not assert that he's incompetent to stand trial or
5 incompetent to go through a sentencing proceeding.
6      MR. BOOTEN: No, Your Honor. But certainly there
7 is -- these are long-standing issues that have been diagnosed.
8      THE COURT: Well, what's the government's response?
9      MS. TAYLOR: Your Honor, I don't object to it if the
10 Court wants to order it. I don't really understand how it
11 would aid the Court in sentencing the defendant. The Court
12 has had the opportunity to review the PSR. I don't really see
13 the point of it, but if the Court wants to order it.
14      THE COURT: Well, having reviewed the presentence
15 report and also considering the letters of support that were
16 sent in on behalf of the defendant, I'm inclined to deny the
17 request.
18      First, it is clear that your client -- or, Mr. Byrd,
19 it's clear that you have a long history of substance abuse. I
20 understand that dates back to the unfortunate results of a
21 serious accident. Also, there is indications that you may
22 have had some learning disabilities, struggled with depression
23 and things like that. But I don't -- and as a result, I do
24 believe that the Bureau of Prisons should conduct an
25 evaluation of you and provide you with adequate and

1  appropriate treatment in terms of mental health counseling as
2  well as to investigate the possibility of whether you need
3  further medical help in the way of medicines or something like
4  that.
5  But I believe that all that is best handled by the
6  Bureau of Prisons. I don't see that there is any compelling
7  reason here to delay the sentencing in order to conduct an
8  evaluation. In fact, I think it would probably be
9  counterproductive because ultimately you're going to go to
10 prison on this charge, and as a result it's going to be
11 through the Bureau of Prisons that you'll have to depend to
12 obtain an evaluation of medical care. And I believe they
13 could adequately handle that, and it would be best that they
14 do it entirely rather than having to depend upon an outside
15 evaluation.
16 So for those reasons, I deny the request, and
17 consequently we'll proceed with sentencing.
18 Since the time of the -- did I have you administer the
19 oath?
20 THE CLERK: Yes.
21 THE COURT: All right. Since the time of the
22 defendant's plea, the probation office has prepared a written
23 presentence report.
24 Mr. Booten, have you read the report?
25 MR. BOOTEN: Yes, Your Honor.

1  THE COURT: Is there any reason why sentencing should
2  not take place today?
3  MR. BOOTEN: No, Your Honor.
4  THE COURT: Mr. Byrd, have you read the report and
5  gone over it with your lawyer?
6  THE DEFENDANT: Briefly, yes.
7  THE COURT: Well, briefly. Do you believe you have
8  had adequate time to discuss it with him?
9  THE DEFENDANT: Yes.
10 THE COURT: All right. Do you understand the report?
11 THE DEFENDANT: Yes, Your Honor.
12 THE COURT: I've reviewed the addendum to the
13 presentence report, and it appears there are no remaining
14 objections. The defendant does, however, claim that a
15 variance might be appropriate, so I'll address the request for
16 a variance after I've calculated the guideline range.
17 I find sufficient indicia of reliability to support
18 the probable accuracy of the information in the presentence
19 report and the addendum. I adopt them both.
20 If an appeal is taken, I'll order the probation office
21 to submit a copy of the final presentence report to the clerk
22 for filing under seal, a copy will go to the Court of Appeals
23 and also be provided upon request to appellate counsel, except
24 for the recommendation section.
25 Mr. Byrd stands convicted of distributing heroin.

1  Federal law provides for this maximum sentence for that crime:
2  Imprisonment of up to 20 years; supervised release of at least
3  three years; a fine of up to a million dollars; restitution; a
4  $100 assessment; and the loss of certain federal benefits.
5       He's also been convicted of possession of a firearm in
6  furtherance of a drug trafficking crime.  Federal law provides
7  for the maximum punishment for this crime to be:  Imprisonment
8  of at least five years and up to life to be served
9  consecutively, that means in addition to, any other term of
10 imprisonment imposed; not more than five years of supervised
11 release; a fine of $250,000; restitution; a $100 special
12 assessment; and also the loss of certain federal benefits.
13      Turning to the Sentencing Guidelines, the amount of
14 heroin attributable to the defendant for sentencing is 373.8
15 grams.  That results under the drug quantity table in a base
16 offense level of 24.
17      Mr. Byrd gets a two-level decrease for accepting
18 responsibility.  He pled guilty before trial and truthfully
19 admitted his conduct.  That reduces his offense level to 22.
20      Does the government have a motion with respect to the
21 third point?
22      MS. TAYLOR:  So moved, Your Honor.
23      THE COURT:  All right.  I grant the government's
24 motion.
25      You get an additional one-level decrease, Mr. Byrd,

1  because you timely notified authorities of your intention to
2  plead guilty. That reduces your offense level to 21.
3       He has four criminal history points. That puts him in
4  criminal history category III under the sentencing table.
5  With a total offense level of 21 and a criminal history
6  category of III, the guideline range would be imprisonment of
7  46 to 57 months as to Count Three, and five years
8  consecutively as to that imprisonment term under Count Five;
9  supervised release of at least three years, and two to five
10 years as to Count Five; a fine of 15,000 up to a million
11 dollars; restitution; and $200 in special assessments.
12      Do counsel have any objection or comment on my
13 calculation of the guideline range?
14      MS. TAYLOR: No objection.
15      MR. BOOTEN: No, Your Honor.
16      THE COURT: All right. Mr. Booten, do you want to
17 explain your argument for a variance?
18      MR. BOOTEN: Your Honor, I'd like to approach the
19 bench at this time.
20      THE COURT: All right. You may.
21      Do you want an in camera hearing?
22      MR. BOOTEN: This is going to be off the record.
23      THE COURT: Well, we can't do something off the
24 record.
25      Why don't you come over here to this side, Ms. Taylor.

1     (Bench conference held, reported, SEALED.)

2     THE COURT: All right. Mr. Booten, you can then

3 otherwise address your request for a variance based on the

4 sentencing memorandum that you filed.

5     MR. BOOTEN: Yes, Your Honor.

6     We're asking that the Court -- there's a domestic

7 battery conviction that occurred in February of 2010, Your

8 Honor. We're talking about a matter that is right at ten

9 years. So we're asking that the Court -- based upon his only

10 other conviction being the drug offense that occurred later,

11 Your Honor, that the Court not consider that in calculating

12 his criminal history and reduce his criminal history score

13 from III to category II.

14     THE COURT: All right. Does the government want to

15 respond?

16     MS. TAYLOR: Respond to the variance, Your Honor?

17     THE COURT: Yes. Yes.

18     MS. TAYLOR: Your Honor, I'm asking for a sentence at

19 the bottom of the guideline range, at the 46 months for

20 various reasons as we've previously stated. And I would just

21 like to point out a couple things to the Court.

22     You know, this was three controlled buys and a search

23 warrant. Those controlled buys were for not user amounts of

24 heroin, not large amounts, but five, eight, seven grams. That

25 is someone who is clearly selling to someone who is going to

1 then sell it down the line, and I look at that a little
2 differently.
3     I would also point out that this defendant had quite
4 the drug operation going on. He had a money counter, he had
5 over $10,000 in cash, he had a gun, he had about 250 grams of
6 heroin all in this apartment. So he did have quite the
7 business going on here in Cabell County.
8     And he also had a prior federal drug conviction. So
9 clearly, you know, that didn't make him change his ways.
10     But for the reasons previously stated, I would ask for
11 a sentence at the bottom of that guideline range, Your Honor.
12     THE COURT: All right. Anything else that the
13 government wants to say?
14     MS. TAYLOR: No, Your Honor.
15     THE COURT: All right. You can respond to that, add
16 anything else you like, Mr. Booten, and then I will turn to
17 Mr. Byrd.
18     MR. BOOTEN: Yes, Your Honor.
19     As the presentence report points out, Mr. Byrd has a
20 serious past drug addiction that led him into this. Prior to
21 that, he was a good student, participated in sports, didn't
22 have any juvenile history. And then after his automobile
23 accident and being prescribed medications, he developed his
24 drug habit which then led into, ah, his dealing drugs to
25 partially support that habit.

1    I understand, Your Honor, that we have a 924(c) in
2 this matter, but there was no evidence that the gun -- that he
3 ever carried the gun during any drug transactions.
4    Your Honor, so we're asking the Court to take his
5 mental health situation, his drug addiction, his criminal
6 history variance, and the fact that this firearm was never
7 carried or used during a transaction, even though he admitted
8 to using it in furtherance -- it was in a dresser drawer, Your
9 Honor, where it was found -- we're asking the Court to fashion
10 an individualized sentence of 72 months in this matter.
11    THE COURT: All right. Mr. Byrd, do you want to say
12 anything before I decide your sentence?
13    THE DEFENDANT: Yes, I actually have a lot to say.
14    THE COURT: Go ahead.
15    THE DEFENDANT: Your Honor, I want to apologize to the
16 Court and to my fiancee Ashley, my mom, my stepfather and my
17 Aunt Kay. I want to apologize to the Court and Stephanie
18 Taylor.
19    And basically I really, umm, gave Mr. Booten every
20 opportunity to, you know, speak for me, but had I known what I
21 know now, I probably wouldn't have kept him as my attorney. I
22 fought with him this entire case. Poor, you know,
23 communication with Stephanie Taylor. I don't blame anybody
24 but myself for that.
25    I -- you know, when I took this plea, you know, a

1  month later he was in rehabilitation for a month or two,
2  however long it was.  You know, all the research I've done,
3  it's not really a 924(c).  I'm not denying my conduct in any
4  sort of way, but I really feel had I known what I know now, I
5  would, you know, really change -- change things.
6        But I can't go back, and I just want to apologize once
7  again.  And, you know, I hope you take into consideration
8  that -- you know, all the factors in my case.  And God bless
9  you.
10       THE COURT:  Well, I'll try to address everything that
11 you and Mr. Booten have raised.
12       First, with respect to Mr. Booten's service, if you
13 were dissatisfied, you've had plenty of time and opportunity
14 to express that dissatisfaction and ask the Court to appoint
15 someone else.  You did not.
16       Secondly, I would observe in this case that what
17 drives the sentence you're facing are facts that are
18 truthfully uncontestable based upon the evidence.  You were
19 found -- well, first, the government had three controlled
20 buys.  There's every indication that each of those buys were
21 well established by law enforcement, well documented by
22 recordings.  Evidence was preserved.
23       As Ms. Taylor mentioned, these were not small amounts
24 like someone selling on the street corner.  I have been very
25 lenient with defendants who are being sentenced when they have

1 been selling small amounts of even heroin in order to support
2 their own habits. And I don't question that you've had a
3 serious drug problem yourself, but this is not a case where
4 you were selling a small amount in order to get some
5 additional heroin or something else to meet your own addiction
6 requirements. These were significant amounts. These were
7 amounts that are consistent with recognizing that the people
8 you were selling to were likely going to turn around and sell
9 some or all of it to someone else.

10 Next, when the police conducted the search -- and
11 there is certainly no basis to contest the constitutionality
12 of that search in my opinion -- they found a huge amount of
13 heroin and thousands of dollars in cash, as well as the gun
14 and other things. Over 250 grams of heroin were seized from
15 your house. That is a huge amount of heroin in one location.
16 That is one of the larger amounts that I recall law
17 enforcement being able to successfully seize in a search
18 warrant in this district, and that is after we've been
19 struggling with this heroin explosion for the past five years.
20 So this was a very large amount of heroin.

21 You had over $10,000 in currency. That is a lot of
22 money to be -- to have around, and all that just demonstrates
23 that you had jumped into your heroin sales with both feet.
24 You, despite having been convicted just a few years before and
25 sentenced in a federal court -- I think that was out of

1 Columbus -- and getting a two-year sentence at that time, you
2 served that sentence, and then within my recollection is about
3 a year and a half after completing that sentence, you started
4 engaging in this series of drug deals. That is just
5 inexcusable.
6 You're not a 19-year-old kid who was raised on the
7 street, Mr. Byrd. You come from a good family that obviously
8 supported you. You are intelligent. I realize that most of
9 this, maybe all of it, dates back to when you first got
10 exposed to painkillers, and it's an all too common story that
11 people start off innocently enough just getting medicine
12 for -- to treat pain and very quickly find out it swallows
13 them, and they become addicted, and I don't question that that
14 is what happened in your case. But even with that, even
15 knowing that you've had a long history of addiction, I cannot
16 see any reason to excuse or minimize your conduct here.
17 As I've said, this was a pretty large scale heroin
18 operation that you were running. You may not have considered
19 yourself to be a big drug dealer, but in fact you were when
20 you conducted sales like these and possessed an amount like
21 this and the cash and the other things.
22 As far as the gun, federal law makes clear that the
23 presence, the mere presence of a firearm around drugs and the
24 indicia of drug dealing is enough for a court to find, as you
25 have admitted, that the person used the firearm in the

1  commission of the offense.  Undoubtedly when people have a
2  large amount of drugs, conduct drug transactions, keep a large
3  amount of cash, they feel the need to have the protection of a
4  firearm.  That is evident here as well.
5  　　　　I note that you also already had been convicted of a
6  felony, so having a gun around for any reason would subject
7  you to a serious additional federal crime, not one that the
8  government chose to charge you with this time, but honestly
9  all of this conduct amounts to very serious criminal conduct.
10  　　　　You know enough about Huntington.  You're from
11  Parkersburg, but I'm sure you know and understand what heroin
12  is doing to this community in particular, as well as across
13  the country.  And when you chose to engage in this type of
14  serious drug dealing with a felony conviction already under
15  your belt, you should have realized that you were digging
16  yourself in a very deep hole.  So I'm not inclined to vary
17  below the guideline range.
18  　　　　I do agree with the government in your case because of
19  the fact, first, that although you served a two-year prison
20  sentence, that is not nearly as long as you're facing now.  I
21  do think a sentence at the bottom end of the guideline is
22  appropriate and sufficient.  So it will be the judgment of the
23  Court that you be committed to the custody of the Bureau of
24  Prisons for a term of 47 -- that was the bottom of the
25  guideline as I recall.

1  THE CLERK: 46.

2  THE COURT: 46. So you'll be committed to the custody
3  of the Bureau of Prisons for a term of 46 months as to Count
4  Three and then a consecutive sentence of 60 months as to Count
5  Five. That will be a total of 106 months.

6  I'll recommend that you be housed as close to
7  Parkersburg, West Virginia as possible. I'll recommend that
8  you be allowed to participate in the drug abuse treatment
9  program wherever you're incarcerated.

10  Upon release from prison, you'll be on supervised
11  release for five years. Within 72 hours of your release from
12  custody, you must report in person to the probation office in
13  the district to which you are released.

14  When you go on supervised release, you must not commit
15  another federal, state or local crime; you must not possess a
16  firearm or other dangerous device; and you must not unlawfully
17  possess a controlled substance.

18  You will be required to comply with the standard terms
19  and conditions of supervised release as recommended by the
20  Sentencing Commission, and as adopted by the Court, including
21  the special condition that you participate in testing,
22  counseling and treatment for drug and alcohol abuse as
23  directed by the probation office. Accordingly, I order that
24  you submit to one drug test within 15 days of release and at
25  least two periodic drug tests thereafter as a condition of

1   your supervised release.

2   I find you don't have the resources to pay a fine, so
3   no fine is imposed.  There is no identifiable victim, so no
4   restitution is ordered.  I note that there is a preliminary
5   order of forfeiture that has been entered whereby you would
6   forfeit to the government any property used to facilitate your
7   drug distribution, including specifically the 16 items
8   described in that preliminary order.  The Court orders the
9   defendant to pay $200 in special assessments; they're due
10  immediately.

11  With the exception of the fine, this sentence is
12  within the guideline range.  It reflects the nature and
13  circumstances of the offense, the history and characteristics
14  of the defendant and the needs for deterrence.

15  Are there any reasons other than those already
16  discussed why the sentence should not be imposed as stated?

17          MS. TAYLOR:  No, Your Honor.

18          MR. BOOTEN:  No, Your Honor.

19          THE COURT:  I order the sentence imposed as stated.

20  Mr. Byrd, you have a right to appeal.  If you want to
21  appeal, you have to file a written notice within 14 days.
22  Otherwise your right to appeal will expire.

23          Do you understand that?

24          THE DEFENDANT:  Yep.

25          THE COURT:  If you file that notice, and the Court

1    finds you don't have the money to hire a lawyer or to get
2    documents for an appeal, those costs will be borne by the
3    government.
4         Do you understand that?
5         THE DEFENDANT:  Yep.
6         THE COURT:  Does the government have a motion with
7    respect to the remaining charges?
8         MS. TAYLOR:  Yes, Your Honor, move to dismiss the
9    remaining counts.
10        THE COURT:  All right.  The Court grants the
11   government's motion.  The remaining charges are dismissed.
12        The defendant has been detained.  Is there anything
13   else we need to address in Mr. Byrd's case?
14        MS. TAYLOR:  No, Your Honor.
15        MR. BOOTEN:  No, Your Honor.
16        THE COURT:  If not, we stand in a brief recess before
17   the next matter is called.
18        THE COURT SECURITY OFFICER:  All rise.  This Honorable
19   Court will be in recess.
20             (Proceedings were concluded at 10:22 a.m.)
21                          ---o0o---

CERTIFICATION:

    I, Kathy L. Swinhart, CSR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter as reported on February 3, 2020.

April 9, 2020
DATE

/s/ Kathy L. Swinhart
KATHY L. SWINHART, CSR

KATHY L. SWINHART, Official Court Reporter (304) 528-2244